AUKLAND, Appellant, vs. ARNOLD and others, Respondents.

*January 31—March 19, 1907.*

*Bills and notes: Signature procured by fraud.*

Under sec. 1676—25 of the Negotiable Instrument Law (ch. 356,.
Laws of 1899) the title of a person who negotiates an instru-
ment is absolutely void as to all the signers when the instru-
ment *or any signature thereto* has been procured by fraudu-
lently representing its character, if the person so deceived could
not have obtained knowledge of its character by the use of ordi-
nary care.

APPEAL from a judgment of the circuit court for Ashland
county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

An action on a joint and several promissory note for
$933.34, dated April 14, 1903, payable two years after date
to the order of W. S. Gilmore & Co., signed by all of the de-
fendants. Before the maturity of the note it was negotiated
for value by W. S. Gilmore & Co. to the plaintiff.

All the defendants except two appeared and answered.
They allege that their signatures were obtained by fraudulent
representations of Gilmore & Co.'s agent as to the nature of
the papers signed, alleging that they were deceived and fraud-
ulently led to believe that they were signing a paper stated to .
be a guaranty instead of a note, as now claimed and asserted
by plaintiff. The defendants allege that they had agreed with
Gilmore & Co. to purchase from them a stallion at the agreed
price of $2,800, to be paid for upon the terms and in the man-
ner following: The horse was to be kept by Gilmore & Co. in
the immediate vicinity and put into the field for service in
the community, and the money collected for the services of
the horse was to be applied each year in payment of the pur-
chase price up to an amount not exceeding one third of the
purchase price. In case the amounts collected for the services
of the horse in any one year did not equal the one-third part
of the purchase price, such unpaid portion was to be paid out

of the money received for such services thereafter. In case the sum realized during any of the first three years exceeded one third of such purchase price and any unpaid portion due, then defendants were to receive such excess. Defendants further claim that they were to sign an "agreement," called a "guaranty," by which they were to obligate themselves to pay any balance due on the purchase price should the horse die, before full payment of the purchase price, on account of the neglect or fault of the defendants. They further allege that the agents of Gilmore & Co. falsely and fraudulently represented to them that the three papers presented to them for signature were such "guaranty" contracts, whereas in truth and fact, as they now learn, such papers were three promissory notes, on one of which this action is brought, and that they each relied upon the false representations believing them to be true, and for that reason signed the notes without knowing their character and nature and without any want of ordinary care to learn their nature and character.

The case was submitted to a jury and a special verdict was returned to the effect that the plaintiff became the owner of the note sued on for value and in good faith, and that he had no knowledge at the time of purchase of such facts as amounted to bad faith. The jury found specifically that Gilmore & Co., payees in the note, "for the purpose of inducing defendants to sign the same, knowingly, falsely, and fraudulently represented to said defendants that it was a writing different in character and nature from a promissory note," and further found that defendants could not by the use of ordinary care have obtained knowledge of its character and nature. Plaintiff moved for direction of a verdict and that the answer to the question, finding that defendants were not able in the exercise of ordinary care to learn the character and nature of the instruments, be changed from "no" to "yes" as to all of the defendants appearing except the defendant *Charles Zibuski,* as to whom the plaintiff admits the answer to be sup-

ported by the evidence. This motion was denied, and upon the motion of the defendants the court ordered judgment in defendants' favor. This is an appeal from this judgment.

For the appellant there was a brief by *Ben S. Smith,* attorney, and *Richard Sleight,* of counsel, and oral argument by *Mr. Sleight.*

*W. S. Smith* and *T. M. Holland,* for the respondents.

SIEBECKER, J.      The fact stands uncontradicted by the record, as above stated, that one of the signatures to the note sued on was procured under circumstances showing that the person so signing did not know the character and nature of the instrument and could not have obtained such knowledge by the use of ordinary care.      Appellant concedes that his title to the note is absolutely void as against the person whose signature was so procured, but insists that this fact in no way affects the validity of the note as against the other persons who ·signed it, if their signatures were not so procured. Whether this claim can be sustained depends upon the significance of sec. 1676—25, Stats. (Supp. 1906), found in ch. 356, Laws of 1899, known as the Negotiable Instrument Act.      This section provides:

"The title of a person who negotiates an instrument is ·defective within the meaning of this act when he obtains the instrument, or any signature thereto, by fraud, . . . or when he negotiates it . . . under such circumstances as amount to a fraud; and the title of such person is absolutely void when such instrument or signature was so procured from a person who did not know the nature of the instrument and could not have obtained such knowledge by the use of ordinary care."

The first clause of this section was considered and interpreted in the recent case of *Hodge v. Smith,* 130 Wis. 326, 110 N. W. 192.      It was there held that the title of a person who negotiates commercial paper is defective when he has obtained any signature thereto by fraud, and that if the party so defrauded be relieved from liability thereon, then

such fraud makes such paper voidable by all the other persons who signed it, though they did not participate in and were ignorant of such fraudulent conduct at the time they signed it. This conclusion was reached upon the ground that, when several persons assume such an obligation, it is material and important that all who join as makers should share equally in bearing the burden of its payment, and if, through the fraud of the person holding it, such equality of burden is disturbed and the burden increased as to some of the persons signing it, such fraud renders the title defective as to all of the persons who signed it.

This being the ascertained meaning of the first part of the section, we proceed to consider and determine the meaning of the following and concluding clause. In terms it expresses the rule of law recognized in the decisions of this court when it was enacted, which was to the effect that, when a signature to a negotiable instrument is obtained by falsely and fraudulently misrepresenting its character, and the person signing it could not have obtained knowledge of the falsity and fraud by the use of ordinary care, this makes the title to the instrument absolutely void as to such signer. *Butler v. Carns,* 37 Wis. 61; *Walker v. Ebert,* 29 Wis. 194; *Keller v. Ruppold,* 115 Wis. 636, 92 N. W. 364; *Franklin v. Killilea,* 126 Wis. 88, 104 N. W. 993. It is conceded by appellant that the title to a note like the one in question is absolutely void as against any person whose signature thereto was procured by false and fraudulent representations as to its character and under such circumstances that he could not have obtained knowledge of its character by the use of ordinary care; but it is averred that the fact of one signature having been so procured does not invalidate the note as to other signers whose signatures were not so procured. The words of the statute, "the title of such person is absolutely void when such instrument or signature was so procured from a person" through misrepresenting its character and from one who was

not guilty of a want of ordinary care, must be read in connection with the preceding clause, declaring a person's title defective "when he obtains the instrument or any signature thereto" in the prohibited manner. These phrases, in their connection, embody the idea that, if the instrument or any signature is obtained in one of the inhibited ways covered by the first and second clauses, then the title to the instrument is, respectively, defective or absolutely void. This court, in construing this language, has found that, if one of several signatures to a note was procured by fraud, the title of the person negotiating it was thereby rendered defective as to all of the signers. Since all of the signers under such circumstances are relieved from liability upon this principle, the conclusion seems necessarily to follow that the title of a person who negotiates an instrument is absolutely void when the instrument or any signature thereto has been procured by fraudulently misrepresenting its character, if the person so deceived could not have obtained knowledge of its character by the use of ordinary care. The considerations which forced the court, in construing the first part of this section, to hold the title to negotiable instruments defective under such circumstances, apply with equal force to the last part of the section, and make the title to the instrument absolutely void under the conditions therein specified. From this construction of the statute it follows that, if one of the signers of a note is released from liability because the note is absolutely void as to him, then the note is likewise invalid as to all of the other signers.

The fact is established that the signature of *Charles Zibuski* to this note was procured by false and fraudulent representations as to its character, and that he could not have obtained knowledge of its true character by the use of ordinary care. This released him from liability, and made plaintiff's title to the note absolutely void as to all of the defendants. He cannot recover.

*By the court.*—Judgment affirmed.